# Procedural Rights of Undocumented Aliens Interdicted in U.S. Internal Waters

Undocumented aliens seeking to reach the United States aboard a vessel that has reached the internal waters of the United States at the time of interdiction, but who have not come ashore on United States "dry land," are not entitled to deportation proceedings or other proceedings under the Immigration and Nationality Act.

Apprehension of such aliens in the internal waters of the United States solely for the purpose of interdicting or repulsing their attempt to enter the United States unlawfully does not constitute an "arrest" under section 287(a)(2) of the Immigration and Nationality Act and would not require the institution of exclusion or other proceedings under the Act.

If such aliens are brought ashore on United States dry land, they would acquire the status of "applicants for admission" and would have to be inspected and screened pursuant to section 235 of the Immigration and Nationality Act.

November 21, 1996

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
IMMIGRATION AND NATURALIZATION SERVICE

This responds to your request for our opinion on several additional questions related to the interdiction of undocumented aliens in vessels before they have come ashore in the United States.[1] Your request was submitted before Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, Division C, 110 Stat. 3009, 3009–546 (1996) ("Reform Act"), which substantially amended the Immigration and Nationality Act, ch. 477, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. §§ 1101–1503) ("INA"), and thereby altered the premises of your questions in significant respects. Taking into account the changes effected by the Reform Act, our response to your inquires may be summarized as follows:

1. Undocumented aliens seeking to reach the United States aboard a transit vessel that has reached the internal waters of the United States at the time of interdiction, but who have not landed or been taken ashore on United States dry land, are not entitled to deportation proceedings (now encompassed within the new "removal proceedings" established by section 304 of the Reform Act, INA § 240, 110 Stat. 3009–589) or other proceedings under the INA.

---

[1] Memorandum for Christopher Schroeder, Acting Assistant Attorney General, Office of Legal Counsel, from David A. Martin, General Counsel, Immigration and Naturalization Service, *Re: Rights of Aliens Found In United States Internal Waters* (Aug. 12, 1996) ("INS Memo"). Your request refines broader questions previously addressed by this Office in opinions issued in 1993 and 1994. *See Immigration Consequences of Undocumented Aliens' Arrival in United States Territorial Waters*, 17 Op. O.L.C. 77 (1993); Memorandum for T. Alexander Aleinikoff, General Counsel, Immigration and Naturalization Service, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Whether the Interdiction of Undocumented Aliens Within United States Territorial Waters Constitutes an "Arrest" under Section 287(a)(2) of the Immigration and Nationality Act* (Apr. 22, 1994) ("Arrest Opinion").

2. Apprehension of such aliens in the internal waters of the United States solely for purposes of interdicting or repulsing their attempt to enter the United States unlawfully does not constitute an "arrest" under section 287(a)(2) of the INA and would not require the institution of exclusion proceedings (now also encompassed by the new "removal proceedings") or other proceedings under the INA. If such aliens are brought ashore on U.S. dry land, however, they would acquire the status of "applicants for admission" and would have to be inspected and screened pursuant to section 235 of the INA.

3. Until the State Department's views on the matter are expressed, we defer to the State Department on the question whether United States treaty obligations would require it to implement non-refoulement protections if an alien apprehended in internal waters demonstrates that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular political group, or political opinion if he is returned to his country. We would note, however, that to the extent such a treaty-based obligation is in conflict with the newly-enacted provisions of the Reform Act, *see, e.g.,* § 302(a), INA § 235(a)(1), 110 Stat. 3009–579 ("Aliens Treated as Applicants for Admission"), the latter would prevail as the more recent enactment if Congress intended that result. *See, e.g., Reid v. Covert,* 354 U.S. 1, 18 (1957); *Fong Yue Ting v. United States,* 149 U.S. 698, 720 (1893).

4. Your inquiry regarding the effect of section 414 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, 1270 ("AEDPA") insofar as it enacted a new subsection 241(d) of the INA has been rendered moot due to the repeal of that subsection by section 308(d)(2)(D) of the Reform Act.

Our analysis of the first two questions follows.

## ANALYSIS

Your inquiry raises questions concerning undocumented aliens (i.e., those lacking a visa or other authorization for lawful entry into the United States) interdicted in the "internal waters" of the United States, which you define by reference to certain treaty and statutory definitions.[2] The internal waters thus defined could include, for example, such locations as the straits between the Florida Keys, portions of the Chesapeake Bay, or even the upper reaches of the Potomac River. For purposes of this analysis, we assume that the aliens in question are aboard

---

[2] The Convention on the Territorial Sea and the Contiguous Zone, Apr. 29, 1958, Part I, § II, art. 5(1), 15 U.S.T. 1606, 1609, provides: "Waters on the landward side of the baseline of the territorial sea form part of the internal waters of the State." The related classification of "Inland Waters" is defined for purposes of domestic law under 33 U.S.C. § 2003(o) as "the navigable waters of the United States shoreward of the navigational demarcation lines dividing the high seas from harbors, rivers, and other inland waters of the United States and the waters of the Great Lakes on the United States side of the International Boundary."

a vessel in transit from another country to the United States but have not landed or disembarked on U.S. soil at the time of interdiction.

## I.

Your initial question asks whether an undocumented alien interdicted in U.S. inland waters has effected an "entry" within the meaning of the INA and is thus entitled to deportation proceedings. In this regard, we note that the amendments to the INA enacted by the Reform Act have supplanted the significance of the technical term "entry" as a legal threshold for such procedural entitlements. *See* Reform Act §§ 301(a) and 308(f), INA § 101(a)(13), 110 Stat. 3009–575, 3009–621 (substituting the term "admission" for "entry" in various sections of the INA). Before enactment of the Reform Act, an alien's "entry" into the United States was generally regarded as a prerequisite to his entitlement to deportation, as opposed to exclusion, proceedings. *See Yang v. Maugans,* 68 F.3d 1540, 1547 (3d Cir. 1995).

Under the amended provisions of the INA, both deportation and exclusion proceedings have been supplanted by the single, streamlined "Removal Proceedings" now governed by section 240 of the INA. That section provides:

> Unless otherwise specified in this Act, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States.

Reform Act § 304(a)(3), INA § 240(a)(3), 110 Stat. 3009–589. These removal proceedings are now called into play both with respect to those aliens who are "applicants for admission" who are not summarily removed under section 235(b)(1)(A)(i) of the INA as well as to those aliens who are "in and admitted to the United States" and who fall within various sub-categories of deportability. INA § 237(a)(1), 8 U.S.C. § 1227(a)(1).

Relatedly, the Reform Act has created the new category of "Aliens Treated as Applicants for Admission" under section 235 of the INA. Reform Act § 302(a), 110 Stat. 3009–579. An alien's classification within *that* category will now determine whether he must receive inspection, screening, and other attendant procedures — including a removal proceeding under section 240 in the case of certain applicants for admission whom the inspection officer determines are "not clearly and beyond a doubt entitled to be admitted" — in contrast to aliens who may be summarily repulsed or returned without any INA screening and procedural requirements. Thus, the question whether an alien's presence on the internal waters constitutes an "entry" mandating "deportation" procedures no longer reflects the governing terminology and procedures. The relevant question now is whether such

an alien qualifies as an "applicant for admission" under section 235(a)(1) of the INA, which provides as follows (emphasis added):

> (1) *Aliens Treated as Applicants for Admission.* — An alien present in the United States who has not been admitted, or who arrives in the United States (whether or not at a designated port of arrival and *including an alien who is brought to the United States after having been interdicted in* international or *United States waters*) shall be deemed for purposes of this Act an applicant for admission.

Thus, aliens who are "present in" or have "arrive[d] in" the United States are to be deemed "applicants for admission" and must be accorded the inspection, screening, and attendant procedures that will result in either admission, asylum, or removal. That raises the question whether an alien interdicted on a vessel in the internal waters of the United States, *before he has disembarked on U.S. land,* shall be deemed "present in the United States" or to have "arrived in the United States." We conclude that the wording of section 235 yields a negative answer to that question.

The underscored portion of section 235 contemplates the situation where an alien is "*brought to* the United States *after* having been interdicted in . . . *United States waters.*" *Id.* (emphasis added). If an unlanded alien interdicted in United States waters — which would include the inland waters — still must be "brought to" the United States, it plainly follows that Congress did not regard such an alien as already present or arrived in the United States.[3] Rather, Congress provided that the unlanded alien interdicted in United States waters must first be "brought to" the United States — i.e., taken ashore to U.S. dry land — before he can be said to have "arrived" there and before he acquires the right to be treated as an applicant for admission.

Given our conclusion that unlanded aliens interdicted on internal waters do not constitute "applicants for admission," and therefore need not be inspected or screened pursuant to section 235(b), it necessarily follows that such aliens are not entitled to removal proceedings (i.e., the amended INA's substitute for deportation proceedings) under section 240. Only those interdicted aliens who qualify as applicants for admission must be referred to removal proceedings if the examining officer determines that they are not "clearly and beyond a doubt entitled

---

[3] This interpretation is consistent with the fact that the INA's current definition of "United States," 8 U.S.C. § 1101(a)(38), does not include waters or airspace subject to the jurisdiction of the United States. Moreover, as emphasized in one recent court of appeals opinion: "Nor can it be said that the current definition implicitly includes territorial waters." *Yang v. Maugans,* 68 F.3d at 1548. The court in *Yang,* noting that the definition of "United States" prior to the 1952 enactment of the INA *did* include "waters . . . subject to [U.S.] jurisdiction," ascribed considerable significance to the absence of "waters" from the current definition in concluding that the "physical presence" requirement of the former "entry" test is satisfied "only when an alien reaches dry land." *Id.* at 1548–49.

to be admitted.'' Reform Act § 302(a), INA § 235(b)(2)(A), 110 Stat. 3009–582.[4] Those aliens who do not land on U.S. soil, in contrast, do not constitute applicants for admission and therefore need not be inspected or screened by an immigration officer.

Our conclusion on this issue is fortified by court decisions interpreting the analogous concept of ''physical presence in the United States'' in deciding whether aliens had effected an ''entry'' under the pre-Reform Act provisions of the INA. As demonstrated in your memorandum, INS Memo at 3–4, those decisions hold that an arriving alien's mere presence on U.S. waters does not establish the requisite physical presence in the United States unless and until the alien has ''landed'' on U.S. soil. *Yang v. Maugans,* 68 F.3d at 1546–49; *Zhang v. Slattery,* 55 F.3d 732, 754 (2d Cir. 1995) (''an alien attempting to enter the United States by sea has not satisfied the physical presence element . . . until he has landed''), *cert. denied,* 516 U.S. 1176 (1996); *Chen Zhou Chai v. Carroll,* 48 F.3d 1331, 1343 (4th Cir. 1995) (Chen never entered the United States because he was apprehended ''before he reached the shore'').

In declining to equate presence in U.S. waters with ''presence in the United States,'' the wording of amended section 235 of the INA is consistent with these holdings. Accordingly, both the text of the amended INA and pertinent judicial precedents confirm the view that an unlanded alien is not entitled to removal proceedings, or any other proceedings under the INA, merely because he is apprehended in the internal waters of the United States. Only when such an alien has reached or been ''brought to the United States [dry land]'' does he attain the status of an ''applicant for admission'' and trigger the procedural requirements linked to that status. Reform Act § 302(a), INA § 235(a)(1).

## II.

The second question is whether an unlanded alien's apprehension within the internal waters constitutes an ''arrest'' for purposes of section 287(a)(2) of the INA, 8 U.S.C. § 1357(a)(2), and would therefore require the institution of exclusion proceedings — i.e., what are now removal proceedings under amended section 240. In particular, INS takes the view that such apprehension constitutes an arrest ''at least when it involves the boarding of the vessel by United States officers, the forced diversion of the vessel at the command of United States officers, or

---

[4] We note that section 235(a)(3) of the amended INA provides: ''All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers.'' (Emphasis added.) We do not believe unlanded aliens interdicted on U.S. internal waters constitute aliens ''otherwise seeking admission'' who must be inspected by immigration officers under this section. Unless that term is limited to those persons who *appear before* immigration officers in the United States (or at its border) seeking admission, it would extend overinclusively to persons who may be hundreds or thousands of miles from the United States, but nonetheless ''seek admission'' to it. Requiring immigration officers to inspect all such persons would make no sense. *Cf. Xiao v. Reno,* 837 F. Supp. 1506, 1562 (N.D. Cal. 1993), *aff'd sub nom. Wang v. Reno,* 81 F.3d 808 (9th Cir. 1996).

the physical custody of an individual (for example, after being pulled from the water).'' INS Memo at 4.

Absent any purpose to hold the alien in question for processing under the INA, prosecution, or for other legal proceedings, we do not view the apprehension of an unlanded alien under the circumstances you describe as an ''arrest'' and do not conclude that it would require the institution of removal proceedings under the INA.

Our 1994 Arrest Opinion concluded that ''INS interdictions of aliens within the territorial waters *do not involve taking aliens into custody and holding them for further legal proceedings,* and are thus not 'arrests' as that term is naturally understood.'' Arrest Opinion at 3 (emphasis added). The mere fact that such an interdiction of unlanded aliens takes place in the internal waters of the United States — e.g., on the straits of the Florida Keys — does not alter or undermine our conclusion on that point. Because such an alien has not landed in the United States, he is not ''present,'' nor has he ''arrived,'' in the United States within the meaning of section 235 of the INA. We therefore do not consider his pre-landing, non-prosecutorial apprehension an ''arrest'' any more than if the apprehension occurred on non-internal territorial waters of the United States. Only if the interdicted alien is taken into custody and held *for the purpose of further immigration proceedings or prosecution* — as opposed to being held until the vessel is escorted or diverted out of United States waters — would an ''arrest'' result.[5]

Your memorandum specifically contends that the apprehension of unlanded aliens in internal waters must be viewed as an arrest under the provisions of section 287(a)(2) of the INA (INS Memo at 4). In this regard, our prior opinion stressed that section 287(a)(2) of the INA ''is not designed to guarantee procedural rights to illegal aliens whom the INS turns back from this country *before they have arrived.*'' Arrest Opinion at 8 (emphasis added). As discussed above, an unlanded interdicted alien has not ''arrived'' in the United States unless and until he disembarks on U.S. dry land. When such an unlanded alien is apprehended and temporarily detained solely in order to ''turn back'' his attempted entry, rather than for the purpose of subjecting him to the procedures or sanctions of U.S. immigration laws, the particular concerns of section 287(a)(2)'s provisions are simply not implicated.

> RICHARD L. SHIFFRIN
> *Deputy Assistant Attorney General*
> *Office of Legal Counsel*

---

[5] Of course, if the alien were taken ashore for some reason — i.e., if he were ''brought to the United States'' within the meaning of section 235(a)(1) — he would be deemed an ''applicant for admission'' and would have to be inspected and screened pursuant to section 235(b), which in some cases may lead in turn to asylum or removal proceedings.